## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80126-CIV-RYSKAMP\VITUNAC

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

    v.

JOHN R. SHREWDER; THE FRANKLIN
GROUP, INC.; and ASHLEY MIRON LESHEM,

        Defendants,
   **and**

ANANDA CAPITAL PARTNERS, INC.

        Relief Defendant.
_____/

NIGHT BOX
FILED

MAR   2005

CLERK, USDC / SDFL /

### MOTION TO DISMISS OF DEFENDANT LESHEM
### AND RELIEF DEFENDANT ANANDA
### AND INCORPORATED MEMORANDUM OF LAW

### MOTION TO DISMISS

DEFENDANT ASHLEY MIRON LESHEM ("Leshem") and RELIEF DEFENDANT

ANANDA CAPITAL PARTNERS, INC. ("Ananda"), each move to dismiss the SEC's

Complaint as to them, pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that the

Complaint fails to state a claim against them upon which relief can be granted.  The basis

for the Motion is that the SEC's claims are grounded upon a cease and desist order which

is unenforceable because the order is in essence an "obey the law" injunction and it is too

vague in light of the Eleventh Circuit's decision in *SEC v. Smyth*, 420 F.3d 1225, 1233 n.14

(11th Cir. 2005).

## MEMORANDUM OF LAW

## BACKGROUND

A.    **Summary of Argument**.

The Complaint against Defendant Leshem and the other defendants has six (6)

counts.  Significantly, the SEC has not alleged that Defendant Leshem committed any

substantive violations of the Federal Securities laws– – such as the anti-fraud provisions

that Defendants Shrewder and The Franklin Group allegedly violated by participating in a

manipulation of the market for several stocks.  Indeed, there is no claim that Leshem aided

and abetted any violations of the Federal Securities laws by other defendants.  Leshem is

only charged with violating a vague cease and desist order entered by the SEC on

March 22, 1999, barring him from participating in a penny stock offering.  (Fifth Claim for

Relief Complaint at ¶ 27).[1]   In the Sixth Claim for Relief, Relief Defendant Ananda is

charged with having "received ill gotten gains" for which it "gave no consideration" and to

"which it has no legitimate claim." (Complaint at ¶ 30).

The SEC says it all in its own summary to the Complaint where it alleges that

_____

[1]       Curiously, in the caption of the Fifth Claim for Relief, he is alleged to have violated,
        **Exchange Act Section 15(b)(6)(B)(i)**, whereas in the body of the Fifth Claim (at ¶ 28) the
        SEC has alleged that Leshem "willfully" "participated" in an offering of penny stock, and
        that he thereby has violated Section 15(b)(6)(B)(i) of the **Securities Act**.  Based on our
        review of the statutes, it is the Exchange Act which is at issue.

        Section 15(b)(6)(B)(i) of the Exchange Act, 15 U.S.C. § 78(b)(6)(B)(i), provides:

        (B)      It shall be unlawful - -
                 (i)      for any person as to whom an order under
                 subparagraph (A) is in effect, without the consent of
                 Commission, willfully to become, or to be, associated with
                 a broker or dealer in contravention of such order, or to
                 participate in an offering of penny stock in contravention of
                 such order;

2

Shrewder and Franklin Group improperly manipulated the market in at least two securities, "inundated the public with millions of faxes ('fax blasts')" that "contained materially false information in order to mislead people into buying the stocks described" and illegally profited by "scalping" – i.e., selling the stock while the price was rising due to the scheme. (Complaint ¶ 4)  Basically, the SEC alleges that Shrewder is a market munipulator and securities fraudster.  The most that can be said about Leshem, based on the allegations in the SEC's Complaint, is as a consultant to ArTec, Leshem hired Shrewder to engage in a promotional campaign for ArTec, and that conduct violated the earlier SEC Order barring Leshem from "participating in a penny stock offering."

As demonstrated below, these allegations - - without more - - do not warrant the imposition of injunctive relief, civil monetary penalties (which is the functional equivalent of a criminal/administrative fine) and disgorgement of allegedly ill-gotten gains, as sought by the SEC in its Complaint against Defendant Leshem.

### B.    The Allegations Against Leshem and Ananda

As to what Leshem and Amanda are alleged to have done, the Complaint states in relevant part:

- On March 22, 1999, the SEC entered an administrative order that ordered Leshem to cease and desist from, "participating in any penny stock offering," In the Matter of Miron Leshem, File No. 3-9153 (March 22, 1999). (Complaint ¶ 10).

- Leshem acted as a paid  consultant to ArTec for purposes of promoting ArTec stock, which violated the SEC Order.  (Complaint ¶ 3).

- Leshem arranged for ArTec to hire and pay defendants Shrewder and The Franklin Group to promote ArTec stock.  (Complaint ¶ 3).

- Leshem participated in the negotiations involving Shrewder and others to set the amount of Shrewder's compensation for his services to ArTec. (Complaint ¶ 20).

3

- Ananda, a Florida corporation, was a consulting firm engaged in advising public and private companies as to business strategies; and Leshem utilized both bank and brokerage accounts in Ananda's name for his activities relating to ArTec and Shrewder.  (Complaint ¶ 11).

- Leshem sent an email to Shrewder about base line volume of trading of ArTec stock at around $0.50 to $0.55 and that "hopefully" average trading volume will reach 30,000 shares per day initially.  (Complaint ¶ 22).

- Ananda wired $5,000.00 to The Franklin Group, which was one-half of the ArTec check that Ananda received from ArTec's COO.  (Complaint ¶ 23).

- On October 19, 2004, Leshem reported back to ArTec management in an email message that "he had an extensive discussions regarding kicking off the PR campaign."  (Complaint ¶ 24).

- Shrewder participated in negotiations with Leshem and ArTec management for additional compensation for another round of promotional activities.  (Complaint ¶ 35).

- An ArTec shareholder transferred 1,000,000 shares to Ananda, and Leshem transferred 600,000 of the 1,000,000 ArTec shares to Shrewder's brokerage account as compensation to Shrewder for another round of activity on behalf of ArTec.  (Complaint ¶ ¶ 36 - 37).

Based on the foregoing allegations, the SEC seeks an Order of this Court:

C.    Permanently enjoining defendant Leshem from further violations of Exchange Act, Section 15(b)(6)(B)(i).

* * *

III.

Permanently barring defendants Shrewder and Leshem from participation in any offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stocks.  All equity stocks are penny stock unless exempted per Exchange Act Section 3(a)(51) [15 U.S.C. § 78c(a)(51)(A)] and Exchange Act Rule 3a51-1 [17 C.F.R.

4

§ 240.3a51-1];[2]

IV.

Ordering defendants Shrewder, TFG, Leshem and relief defendant Ananda to provide an accounting and to disgorge any ill-gotten gains and/or unjust enrichment realized by each of them, plus prejudgment interest thereon;

V.

Ordering defendants Shrewder, TFG and Leshem to pay appropriate civil monetary penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)(3)].

(Complaint at Prayer for Relief, p. 25).

(Emphasis supplied).

The 1999 cease and desist Order, which is the foundation for the Complaint against movants, is too vague to be enforceable and the Complaint as to Defendants Leshem and Ananda should be dismissed with prejudice because Plaintiff can prove no set of facts which would entitle it to the relief sought against Leshem and Ananda.

## ARGUMENT

I.     **THE COMPLAINT AS TO DEFENDANTS LESHEM AND RELIEF DEFENDANT ANANDA SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6).**

A.     Rule 12(b)(6) Legal Standard.

In ruling on a motion to dismiss, the court must view the allegations of the complaint

---

[2]     Comparing the specific nature of the relief sought in paragraph III of the Prayer for Relief of the Complaint with the vague prohibitions of the 1999 Order, further illustrates the vague, indefinite and unenforceable language used in the cease and desist Order, which is the basis for the SEC's claims against the movants.

5

in the light most favorable to the plaintiff. *Scheuer v. Rhoades*, 416 U.S. 232 (1974). The court should not dismiss a complaint for failure to state a claim unless it appears beyond any doubt that the Plaintiff can prove no set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions, masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); quoted in *SEC v. Scrushy*, 2005 WL 3279894, *1 (N.D. Ala. 2005).

Additionally, on a motion to dismiss securities claims, the court may consider "evidence outside the pleadings that is undisputedly authentic and on which the plaintiff specifically has relied in the complaint[,]" as well as "any relevant documents legally required by and publicly filed with the SEC." *In re CNL Hotels & Resorts, Inc. Securities Litigation*, 2005 WL 1126561, *5 n.13 (M.D. Fla. 2005), quoting *In re JDN Realty Corp. SEC Litig.*, 182 F.Supp.2d 1230, 1239 (N.D. Ga.2002); *SEC v. Scrushy*, 2005 WL 3279894 at *1. Accordingly, we attach hereto as Exhibit A the SEC's March 22, 1999 Order referred to repeatedly in the Complaint and which is the basis for the SEC's claim for relief against Defendant Leshem and Relief Defendant Ananda. (See Complaint ¶ 10).

In dismissing portions of a recent SEC Complaint, in *SEC v. Scrushy*, 2005 WL 3279894, a United States District Court in Alabama observed:

> The [SEC's] complaint contains argument, speculations, hypotheticals, and perhaps an outline of closing statements, none of which are appropriate in a complaint. *See* Rule 8(a), Fed.R.Civ.Pro. ("A pleading which sets forth a claim for relief ... shall contain (2) a short and plain statement of the claim showing that the pleader is entitled to relief ..."). The court is of the opinion that the second amended complaint fails to conform to this basic tenet of pleading.

6

Thus, it is clear that the SEC must comply with the Federal Rules just like any other federal court litigant.

The Cease and Desist order entered by the SEC (Exhibit A) against Leshem provided, in part:

> 1.    Respondent Leshem, effective immediately, shall cease and desist from committing or causing any violations and any future violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

> 2.    Respondent Leshem, effective immediately, be and hereby is barred from participation in penny stock offerings.

This Cease and Desist Order is the _sine qua non_ of the SEC's Complaint against Leshem and Ananda and that Order is unenforceable because it is so vague as to not give Defendant Leshem fair notice of what he can and cannot do.  Without a valid and enforceable Cease and Desist Order, this Court lacks a basis for: (i) enjoining a violation of Section 15(b)(6)(B)(i); (ii) permanently barring Leshem from participation in any penny stock offering; (iii) ordering Ananda and Leshem to disgorge ill-gotten gains or unjust enrichment; and (iv) ordering Leshem to pay appropriate civil monetary penalties, pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. § 73u(d)(3).

In a recent case on point, _SEC v. Smyth_, 420 F.3d 1225 (11th Cir. 2005), the Eleventh Circuit Court of Appeals, in holding an SEC injunction unenforceable, stated:

> The injunctions contained in paragraphs II, III, and IV of the consent decree are identical to the injunction in paragraph I to the extent that they track the provisions of the statute or regulation the violation of which is enjoined.  The paragraphs

SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, ROLNICK & GREIF, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131  (305) 371-8797

differ only with respect to the conduct that the statute or regulations explicitly proscribe. Each of the injunctions is a quintessential "obey-the-law" injunction. *See Florida Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehabilitative Servs.*, 225 F.3d 1208, 1222-23 (11th Cir. 2000):

This Circuit has held repeatedly that "obey the law" injunctions are unenforceable. *See, e.g., Burton v. City of Belle Glade*, 178 F.3d 1175, 1200 (11th Cir. 1999) (holding that injunction which prohibited municipality from discriminating on the basis of race in its annexation decisions "would do no more than instruct the City to 'obey the law,' " and therefore was invalid);[3] *Payne v. Travenol Labs., Inc.* 565 F.2d 895, 899 (5th Cir. 1978) (invalidating injunction that prohibited defendant from violating Title VII in its employment decisions). The specificity requirement of Rule 65(d) is no mere technicality; "[the] command of specificity is a reflection of the seriousness of the consequences which may flow from a violation of an injunctive order." *Payne,* 565 F.2d at 897. An injunction must be framed so that those enjoined know exactly what conduct the court has prohibited and what steps they must take to conform their conduct to the law. *See Meyer v. Brown & Root Constr. Co.,* 661 F.2d 369, 373 (5th Cir. 1981) (citing *International Longshoremen's Assoc. v. Philadelphia Marine Trade Assoc.,* 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967)).

*Smyth,* 420 F.3d at 1233, n.14.

Likewise, cease and desist orders (as well as injunctions) may not be enforced unless they are sufficiently clear and precise as to the conduct which is prohibited. As the District of Columbia Circuit Court of Appeals recognized in *Joseph A. Kaplan & Sons, Inc. v. FTC,* 347 F.2d 785, 790-91 (D.C. Cir. 1964):

We are reminded that Kaplan is subject to heavy monetary penalties if it should later be found to have violated the terms of the commission's final order.   [discussions of amendments to the Clayton Act omitted].

---

[3]   In the *Belle Glade* case, the Court of Appeals affirmed in part portions of this Court's decision below that held that an injunction ordering a city not to discriminate on the basis of race in future annexation decisions would not satisfy the specificity requirements for an injunction .

8

\* \* \*

[t]he [Supreme] Court declared:

'The severity of possible penalties prescribed by the
amendments [to the Clayton Act] for violations of orders which
have become final underlines the necessity for fashioning orders
which are, at the outset, sufficiently clear and precise to avoid
raising serious questions as to their meaning and application.'
*FTC v. Henry Broch & Co.*, 368 U.S. 360, 367-368, 82 S.Ct. 431,
436, 7 L.Ed.2d 353 (1962).

\* \* \*

Kaplan can, of course, seek to take advantage of the
Commission's procedure for advising a respondent as to whether
its proposed conduct violates the terms of its order.  But this
procedure might well prove a wholly inadequate means for
clarifying language as broad as that contained in Paragraph 3.
Kaplan will be then in the position of inquiring whether its
proposals violate the Commission's order, not whether they
violate the antitrust laws.  If it should honestly and in good faith
disagree with the Commission's interpretation and implement
them notwithstanding the Commission's disapproval, it risks
incurring the substantial penalties for violation of a final order,
not simply a proceeding before the Commission, accompanied
by a full hearing and resulting, at worst, in an order to cease and
desist. And if the Commission determines to pursue the matter,
*Kaplan will come before the contempt court with a record of*
*having ignored the Commission's advice.* In order to avoid this
possibility, it may be impelled to forego altogether whatever
advantages the procedure affords.  All of these, of course, are
problems that any convicted violator of the antitrust laws
encounters.  **But when an order is as broad as Paragraph 3**
**of the Commission's order in this case, honest**
**disagreements as to its scope and meaning will be**
**considerably more frequent than otherwise might, or need,**
**be the case.  A respondent forced to operate thereunder**
**must either expose his major business decisions to a**
**Commission veto, or remain in the dark regarding their legal**
**consequences, with the risk, in either event, of incurring the**
**substantial penalties now provided for by statute.** (Emphasis
supplied)

9

        In analogous contexts, it is axiomatic that an indefinite or vague order cannot form the

basis for contempt, because the language does not give the person subject to the decree

notice of specific acts or conduct which is forbidden. *Forar Corp. v. Deccaid Services, Inc.*,

983 F.2d 427, (2d Cir. 1993). (Preliminary injunction would not be enforced where it was too

indefinite and ambiguous to permit enforcement); *Converse, Inc. v. Reebok International, Ltd.*,

328 F. Supp. 2d 166, (D. Mass 2004) (key paragraphs of consent decree were not

enforceable since they lacked specificity; therefore, shoe company was not on notice of the

conduct forbidden or enjoined); *Gates v. Shinn*, 98 F. 3d 463 (9th Cir. 1996), cert. denied, 520

U.S. 1274 (1997). (A consent decree standard of "appropriate level of psychiatric care" and

treatment was insufficiently specific to uphold consent order against sate medical facility.)

        The Cease and Desist order prohibiting Leshem from "participating in a penny stock

offering" suffers from the same infirmity.

        Similarly, an injunction cannot be enforceable if reference must be made to extraneous

or collateral documents to understand its meaning. *Forar Corp. v. Deccaid*, 983 F.2d 427, (2d

Cir. 1993) (Preliminary injunction was too vague and indefinite, to be enforced where one had

to turn to unclear extrinsic documents in an attempt to discover the breadth of the Court's

prohibition). *Gates v. Shinn*, 98 F. 3d 463 (9th Cir. 1996), cert. denied, 520 U.S. 1274 (1997).

        A district court may punish for disobedience of an order only if the order is clear and

unambiguous.  "The judicial contempt power is a potent weapon.  When it is founded upon

a decree too vague to be understood, it can be a deadly one." *International Longshoremen's

Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.W. 64, 76, 88 S.Ct. 201, 208,

10

19 L.Ed.2d 236 (1967). "An unclear order provides insufficient notice to justify a sanction as harsh as contempt," *United States v. International Bhd. of Teamsters*, 899 F.2d 143, 146 (2d Cir. 1990).

An injunction must be complete on its face and provide the person enjoined or whose conduct is being constrained with fair warning of what conduct is forbidden. It is insufficient to enjoin someone from merely violating a statute.

The same is true of an SEC cease and desist order since the "willful" violation of it is punishable by the imposition of civil monetary penalties, pursuant to 15 U.S.C. § 78u(d)(3). Civil monetary penalties are the functional equivalent of a fine, penalty or forfeiture under applicable administrative and criminal laws. Cf. *Tull v. United States*, 481 U.S. 412, (1987). (The Seventh Amendment's right to a jury trial applies to civil actions to collect a civil penalty.)

To illustrate in *Koch v. SEC*, 177 F.3d 784, 787-88 (9th Cir. 1999), the Ninth Circuit Court of Appeals recognized that Congress in enacting the "penny stock bar" provisions of the Securities Enforcement Remedies and Penny Stock Reform Act ("Penny Stock Reform Act") enhanced and expanded the SEC's powers to take action against wrongdoers i.e., previously an order barring a person from "participating in a penny stock offering was not an existing remedy," (as opposed) to merely codifying existing law). Therefore, the Ninth Circuit in *Koch* refused to apply the Penny Stock Reform Act retroactively. The Ninth Circuit in *Koch* contrasted its earlier decision in *SEC v. First Pacific Bancorp*, 142 F.3rd 1186 (9th Cir. 1998) *cert. denied sub nom,* 525 U.S. 112 (1999), where it held that barring an individual from acting as an officer and director as a consequence of pre-Remedies Act activities would not be prohibited, since the amendments in that respect only codified pre-existing authority to impose an officer and director bar as an equitable remedy.

11

Nor would Leshem's conduct which gave rise to the cease and desist order give him fair notice that the conduct alleged in the present Complaint was forbidden by the 1999 SEC Order. In the earlier 1999 case, Mr. Leshem was alleged to have paid money to stock broker-dealer representatives to encourage them to get their customers to buy certain stock. This is not the same conduct which allegedly is involved in the current case. (See Exhibit A).

## C. The Claims against Relief Defendant Ananda Must Also Be Dismissed.

As noted above, the SEC seeks disgorgement of purportedly ill-gotten gains from Relief Defendant Ananda. The SEC has alleged that Ananda received "ill-gotten gains for which it gave no consideration" and to which it has no legitimate claim (Complaint ¶ 30). First, assuming argumendo that Ananda gave no consideration to ArTec, that might give ArTec a contract claim against Ananda under state law, but how is that a concern of the SEC? Second, if the SEC claims that Ananda received "ill-gotten gains" or illegal profits, then the receipt of those gains was illegal and improper only if Ananda itself violated the federal securities laws - - which has not been alleged - - or that the gains were ill-gotten because Ananda was used as an instrument or alter ego of Leshem for purposes of violating the Cease and Desist Order. But, that Order is not enforceable for the reasons stated above. Either way, there is no basis for an award of disgorgement against Ananda.

The Complaint should be dismissed as to Ananda because (a) there is no allegation that Ananda violated any securities law, and (b) to the extent Ananda's alleged liability flows from Leshem's violation of the Cease and Desist Order, that Order is unenforceable.

SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, ROLNICK & GREIF, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131 · (305) 371-8797

## CONCLUSION

In view of the foregoing, the Complaint, as directed to Defendant Leshem and Relief

Defendant Ananda Capital, should be dismissed with prejudice.

Respectfully submitted,

**NANCY VAN SANT, ESQUIRE**
Florida Bar No. 0885370
**STANLEY A. BEILEY, ESQUIRE**
Florida Bar No. 004848
**SACHER, ZELMAN, VAN SANT, PAUL,**
  **BEILEY, HARTMAN, ROLNICK & GREIF, P.A.**
1401 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 371-8797
Facsimile: (305) 374-2605
Email: nvansant@sacherzelman.com
**Counsel for Defendant**
  **Ashley Miron Leshem and**
  **Relief Defendant Ananda Capital Partners, Inc.**

13

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a copy of the foregoing was sent via facsimile and U.S. Mail

to Stephen L. Cohen, Esquire, Counsel for Plaintiff, Securities and Exchange Commission,

100 F Street, N.E., Washington, D.C. 20549, Facsimile: (202) 551-9245, and Martin J.

Alexander, Counsel for Defendants John R. Shrewder and The Franklin Group, Holland &

Knight LLP, 222 Lakeview Avenue - Suite 1000, West Palm Beach, Florida 33401, Facsimile:

(561) 650-8399.

Nancy Van Sant, Esq.
Counsel for Defendant
  Ashley Miron Leshem and
  Relief Defendant
  Ananda Capital Partners, Inc.

14

EXHIBIT A

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No.   7658 / March 22, 1999

SECURITIES EXCHANGE ACT OF 1934
Release No.  41197 / March 22, 1999

ADMINISTRATIVE PROCEEDING
File No. 3 - 9153

- - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| In the Matter of        : <br> : <br> Miron Leshem,        : <br> : <br>       Respondent.   : | ORDER MAKING FINDINGS, <br> IMPOSING REMEDIAL SANCTIONS <br> AND IMPOSING A CEASE-AND- <br> DESIST ORDER |

- - - - - - - - - - - - - - - - - - -

### I.

In connection with a public administrative proceeding instituted against him pursuant to Section 8A of the Securities Act of 1933 ("Securities Act") and Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act"), Miron Leshem ("Leshem") has submitted an Offer of Settlement ("Offer") to the Securities and Exchange Commission ("Commission"), which the Commission has determined to accept. Solely for the purpose of this proceeding and any other proceeding brought by or on behalf of the Commission or in which the Commission is a party, and without admitting or denying the findings contained herein, except as to jurisdiction which is admitted, Leshem consents to the entry of the findings and remedial sanctions set forth below.

### II.

On the basis of this Order and the Offer submitted by Leshem, the Commission makes the following findings[1]:

---

[1]      Any findings contained herein are made pursuant to Respondent Leshem's Offer of Settlement and are not binding on any other person or entity named as a respondent in this or any other proceeding.



EXHIBIT
A

A.    Miron Leshem ("Leshem"), at the time of the conduct in question was 32 years old, and a resident of Florida.  Although Leshem was previously a registered representative, at the time of the conduct in question he was not, and currently is not, associated with a registered broker-dealer.

B.    Debbie Reynolds Hotel & Casino, Inc. f/k/a Halter Venture Corp. is located in Las Vegas, Nevada.  It is a hotel business.  The company's securities are registered with the Commission pursuant to Section 12(g) of the Exchange Act and are listed on the Over-the-Counter Bulletin Board under the symbol DEBI.

C.    During the period from at least in or about the beginning of November 1995 through in or about the end of November 1995, Leshem offered to pay, and did pay, undisclosed compensation to person(s) whom he believed to be registered representative(s) or registered principal(s), to induce such registered representatives, registered principals or persons to purchase DEBI stock for the accounts of customers.  For example, between on or about November 14 and November 24, 1995, Leshem directly or indirectly transferred, or caused to be transferred, a total of 1,500 shares of DEBI stock in undisclosed compensation to a broker-dealer for having previously purchased 10,000 shares of DEBI at approximately $2.00 per share by the broker-dealer.  Accordingly, Leshem willfully violated, and committed and caused violations of, Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

III.

Based on the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions and issue the cease-and-desist order as specified in the Offer of Settlement.

Accordingly, IT IS HEREBY ORDERED that:

1.    Respondent Leshem, effective immediately, cease and desist from committing or causing any violations and any future violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

2.    Respondent Leshem, effective immediately, be and hereby is barred from participation in penny stock offerings; and

2

3.    *Respondent Leshem*, prior to the close of business on the thirtieth business day after the date of this Order, pay disgorgement in the amount of $3,000, plus interest from November 1995 to the date of the Order,[2] to the United States Treasury. Such payment shall be: (a) made by United States postal money order, certified check, bank cashier's check or bank money order; (b) made payable to the U.S. Securities and Exchange Commission; (c) hand-delivered to the Comptroller, Securities and Exchange Commission, Mail Stop 0-3, 450 Fifth Street, N.W., Washington, D.C. 20549; and (d) submitted under cover letter which identifies Leshem as the Respondent in this proceeding, the file number of this proceeding, 3-9153, and a copy of which cover letter and money order or check shall be sent to Thomas A. Capezza, Senior Attorney, Northeast Regional Office, Securities and Exchange Commission, 7 World Trade Center, 13th Floor, New York, New York 10048.

For the Commission, by its Secretary, pursuant to delegated authority.

Jonathan G. Katz
Secretary

By: Margaret H. McFarland
Deputy Secretary

---

[2]    The amount of prejudgment interest is to be calculated using the Internal Revenue Service late payment rate.

3