UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80126-CIV-RYSKAMP\VITUNAC

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

JOHN R. SHREWDER; THE FRANKLIN
GROUP, INC.; and ASHLEY MIRON LESHEM,

    Defendants,
and

ANANDA CAPITAL PARTNERS, INC.

    Relief Defendant.
_____/

**NIGHT BOX FILED**
MAY 16 2006
CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

### REPLY MEMORANDUM OF DEFENDANT LESHEM AND RELIEF DEFENDANT ANANDA IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

Defendant Ashley Miron Leshem ("Leshem") and Relief Defendant Ananda Capital Partners ("Ananda"), hereby submit their Reply Memorandum in Further Support of their Motion to Dismiss the SEC's Complaint ("Motion to Dismiss") [D.E. 16]. In its Opposition [D.E. 21], the SEC claims that the Motion to Dismiss is nothing more than a collateral attack on the SEC's 1999 Cease and Desist Order, although the SEC fails to cite any statute or case that would prohibit such a collateral attack under the circumstances here. The SEC argues (i) the Cease and Desist Order is clear and binding on Leshem; (ii) Leshem should be barred from challenging the enforceability of the Order; and (iii) the Complaint states a claim under the Securities Exchange Act of 1934 ("Exchange Act").

The SEC's arguments are without merit and will be dealt with *seriatim*, specifically: (i) the language of the bar order is so vague and indefinite as to be unenforceable as Defendant Leshem did not have fair notice of what conduct was to be prohibited; (ii) Leshem did not knowingly waive any right to judicial review of the bar order; (iii) the Complaint does not state a claim for relief under the Securities Exchange Act of 1934 ("Exchange Act"); and (iv) because the SEC's claims against Ananda Capital are derivative of claims against Leshem, the claims as to it must be dismissed.

### A.    The Cease and Desist Order is Vague and Unenforceable.

The Order at issue bars Defendant Leshem from "participating in penny stock offerings." The SEC implicitly concedes (at p. 3 of its Opp. Mem.) that the Order itself does not in any way delineate what it means to participate in a penny stock offering, or for that matter, what the core term "penny stock" means. Presumptively, the Order does not give "fair notice" of what is prohibited.

The SEC argues that Leshem should look to the statutes referenced in the order to determine what conduct is prohibited and to Leshem's Offer of Settlement (part of Exhibit 1 to Opp. Mem.). Instead of some labyrinthine DaVinci Code, we submit the SEC should draft bar orders and settlement documents in plain and understandable English.[1] Although the statutes cited discuss "participation in penny stock offerings", Congress, in enacting the Penny Stock Act, gave the SEC much leeway to define terms, including what is a "penny

---

[1] Since 1988, the SEC has admonished public companies that file with it to use "Plain English" in documents provided to investors so they may understand the disclosures being made and to avoid legalese or convoluted disclosure. Securities Act Rel. No. 33-7497 (Oct. 1, 1988). The SEC should follow its own advice. As we discuss below in Section I(B), the Offer of Settlement of Miron Leshem to the Bar Order ("Offer of <u>Settlement</u>") executed by Leshem is attached to the SEC's Opposition as part of Exhibit 1. This Offer of Settlement, like the Order which was entered pursuant to it, suffers from the same vagueness, because it never says Leshem "hereby waives his right to judicial review." It states he is waiving rights found in certain enumerated provisions of Volume 17 of the Code of Federal Regulations. The relevant provisions of the Code of Federal Regulations are neither attached to the Order, nor explained.

-2-

SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, ROLNICK & GREIF, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131 · (305) 371-8797

stock" and to exempt classes of persons from its prohibitions. To require Leshem to attempt to figure out what is a "penny stock" and what conduct the rules thereunder prohibit in "participating in a penny-stock offering," and using the SEC's logic, Leshem would have to review, and analyze, not only the Exchange Act, but also the rules adopted pursuant to the Exchange Act, interpretations thereof, the definition of "equity security," and also rules under other Federal Securities Laws. The SEC rule defining "penny stock" is itself five (5) pages long. 17 C.F.R. § 240.3a-51. Moreover, as noted above, pursuant to the statute principally relied upon by the SEC, Section 15(b)(6)(B)(i) of the Exchange Act, 15 U.S.C. § 78o(b)(6)(B)(I), the "[SEC] may by rule or regulation define the term and may exempt any person or class of persons conditionally or unconditionally, in whole or in part from such rule." Id. Congress has also given the SEC leeway in changing the definition of "penny stock."

In support of the sufficiency of the Order entered by the SEC, the SEC cites little more than rhetoric drawn from the legislative history of the Penny Stock Act. Second, the SEC attempts to diminish the controlling recent authority cited by Leshem in his motion, SEC v Smyth, 420 F.3d 1225, 1233, n. 14 (11th Cir. 2005), which held sua sponte that a district court should not enforce an injunction which does nothing more than say "obey the law" or in other words, simply tracks the statutory language. The Carriba case is simply not on point, because it involved the issuance of a preliminary injunction--not permanent relief such as a bar order prohibiting otherwise lawful activity. Similarly, Carriba did not involve SEC claims for contempt-like relief (fines and civil monetary penalties), but whether it was appropriate to issue a preliminary injunction. A preliminary injunction, by its nature and pursuant to Fed. R.Civ. P.65(a) likely will be revised and/or modified or even dissolved

-3-

SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, ROLNICK & GREIF, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131 · (305) 371-8797

after a full presentation on the merits. Finally, Carriba was principally about whether to enter injunctive relief, whereas, footnote 14 in Smyth and this case concern the issue of when is an order previously entered is enforceable.

Movants do not question the authority of the SEC to issue a Cease and Desist Order. They only claim that if the SEC wishes to enforce a Cease and Desist Order, the conduct prohibited must be clear on its face before a federal court enforces it and imposes contempt-like, quasi-criminal and lifetime relief. This is particularly true, where, as here, the SEC concedes the alleged conduct in which Defendant Leshem allegedly engaged is not unlawful or improper, see SEC Memo. at 4. Unlike the anti-fraud injunction in Smyth, the conduct proscribed by the penny stock bar sought to be enforced is **not** in and of itself illegal conduct. Thus, Leshem's arguments for not enforcing a vague decree is even stronger than the facts in Smyth. As recognized by the Eleventh Circuit in Smyth, 420 F. 3d at 1233, n. 14, citing Payne v Travenol Labs, Inc., 565 F. 2d 895 (5th Cir. 1978), the specificity requirement is "a reflecting of the seriousness of the consequences which may flow from the validation of an injunctive order." In other words, the SEC, with its vague order is asking this court to enjoin and punish otherwise lawful activities. According to the SEC, because the penny stock bar prohibits conduct that is otherwise legal, Leshem's bar order cannot be an "obey the law" injunction. This is circular reasoning. The "obey the law" epithet merely refers to the type of order which does no more than recite the language of the statute and does not provide a defendant with any clear guidance as to what he may or may not do. If a Court can enter disgorgement, civil monetary penalties (traditionally quasi-criminal relief based on a jury verdict or findings), and can prohibit a 32-year old

-4-

SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, ROLNICK & GREIF, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131 (305) 371-8797

defendant from engaging in future **legal** conduct forever, the order must be clear on its face as to what conduct is prohibited.

The cases are legion that courts will not enforce the terms of vague and ambiguous injunctions and orders. See, e.g., Securities & Exchange Comm'n v. Lorin, 76 F.3d 458 (2nd Cir. 1996) (trial court did not satisfy requirement of specificity in issuing injunction against violators of federal securities laws, which did not specify conduct to be enjoined and gave as reason conclusion that there was likelihood defendants would engage in further violations of securities laws.); Hughey v. JMS Development Corp., 78 F.3d 1523 (11th Cir. 1996) (permanent injunction prohibiting developer from discharging any stormwater runoff as violation of Clean Water Act was unenforceable "obey the law" injunction in absence of operative command capable of enforcement; injunction did not indicate whether developer was to stop rain from falling, build retention pond to control stormwater discharges, or construct water treatment plant.); IDS Life Ins. Co. v. SunAmerica Life Ins. Co., 136 F.3d 537 (7th Cir. 1998) (provision of preliminary injunction that enjoined defendant insurer from inducing sales agents and former sales agents of plaintiff securities broker and insurer to engage in unspecified "unlawful insurance practices" was impermissibly vague.); Reliance Ins. Co. v. Mast Construction Co., 84 F.3d 372 (10th Cir. 1996) (restraining order which enjoined corporation and corporate officers from transferring their funds and assets, other than in the normal course of business, was not sufficiently specific and, thus, restraining was invalid and could not provide basis for compensatory civil contempt action against bank which allegedly assisted officers in transferring assets.)

SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, ROLNICK & GREIF, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131 · (305) 371-8797

The SEC also argues that when two panels of the 11th Circuit conflict (the Carriba case in 1982, and SEC v. Smyth in 2005, relied upon by Defendant Leshem), the first one released is controlling. It relies on the Ginsburg case, which has nothing to do with this general proposition. The SEC has tried to create a conflict, where there is none. Carriba Air involves a preliminary injunction and what is the appropriate evidentiary basis which supports the entry of a preliminary injunction. The discussion in Smyth concerns whether or not it is fair to enforce an "obey the law" injunction.

**B.  Leshem Is Not Barred from Collaterally Attacking the Cease and Desist Order Because He Did Not Unequivocally, Intelligently, Knowingly and Voluntarily Waive Any Right to Judicial Review.**

First, the SEC argues Leshem's rights to judicial analysis should be forfeited in favor of "equitable principles of finality." It understandably cites no legal support—nor could it—for the deprivation of Leshem's fundamental rights to receive judicial review simply to achieve finality to litigation. Second, the SEC argues that Leshem waived all rights to judicial review of the penny stock bar citing paragraphs V, VI, VIII of the Consent Agreement entered into by Leshem, based upon which the SEC entered its bar order. The cite given by the SEC supporting this "waiver of judicial review" is:

> Accord Ex. 2 at ¶¶ V, VI, VIII with Securities and Exchange Commission Rules of Practice 240(c)(4)(v), 17 C.F.R. § 201.240(c) ("By submitting an offer of settlement, the person making the offer waives, subject to acceptance of the offer . . . judicial review by any court.").

[SEC Opp. Mem. At 6]

Reading the SEC's cite, one would think that the paragraphs in the Offer of Settlement state "I hereby waive rights to judicial review." They do not. A careful reading of the provisions in the Offer of Settlement/Consent signed by Leshem and relied upon by the

-6-

SEC, indicate that **not one** of the provisions cited by the SEC plainly and unambiguously waive the right to judicial review, to collaterally attack, or to seek modification or interpretation of the Order. In fact, **not one** of the paragraphs cited by the SEC in the Consent even mentions direct or indirect **judicial review** of the Order or a collateral review of the Order. The Offer, at best, in Paragraph V, obliquely refers to a waiver of rights under certain provisions of 17 C.F.R., without specifying in plain English what they are.[2] Thus, the Settlement Offer suffers from the same vagueness and loose language which makes the Bar Order unenforceable.

The law is clear that in order to enforce a waiver of constitutional or statutory rights, and for a court to find it effective, a waiver "not only must be voluntary but must be knowing, intelligent (and done) with sufficient awareness of the relevant circumstances and likely consequences." Brady v Maryland, 397 U.S. 742, 748 (1970). These same principles apply in the civil context. See, e.g., Mosley v. St. Louis South-Western Railway, 634 F. 2d 947 (5th Cir. 1981).

The SEC's settlement documents do not provide a basis for finding that Leshem intelligently waived all rights for judicial review or clarification of the Bar Order by signing the Consent, since the language in the Consent actually executed by Leshem does **not** clearly and unequivocally waive such rights.[3]

---

[2] The language in Paragraph V of the Settlement Offer is to be contrasted with Paragraph VII of the Offer of Settlement signed by Leshem, which states "[c]onsistent with the provisions of 17 C.F.R. § 202.5(f), Leshem waives any claim of Double Jeopardy based upon the Settlement of this proceeding, including the imposition of any remedy or civil penalty herein." Was the SEC playing "hide the pea" in Section V, where it merely referred to some provisions in 17 C.F.R., without elaborating or discussing the specific rights to be forfeited?

[3] Some courts have likened a consent decree to a contract between the parties. It has been long recognized in other contexts, that ambiguities in significant contractual documents must be construed against the drafter, i.e., here the SEC. See, e.g., Lazovitz v Saxon Construction, Inc., 911 F. 2d 588, 592 (11th Cir. 1990) (applying Florida law) "Lazovitz drafted the agreement and under the maxim *contra proferentum*,

SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, ROLNICK & GREIF, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131 · (305) 371-8797

Likewise, contrary to the arguments of the SEC, the fact that the Order before the SEC was entered by "consent" does not militate against this Court's duty to independently analyze the language in the Order to determine its enforceability, before entering the Draconian relief sought by the SEC, which amounts to the equivalent of criminal fines and penalties and a lifetime bar against engaging in otherwise lawful activities.[4]

The fact that an Order was entered by consent does not negate a Court's obligation to examine its clarity and specificity before it can be the foundation for a contempt order. Gates v. Shinn, 98 F. 3d 463, 468 (9th Cir. 1996)[5]. In Gates, the Ninth Circuit specifically considered United States v. Armour cited by the Plaintiff, but noted that the meaning must be "discerned from the four corners" of the decree. According to the Ninth Circuit:

> If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt. The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it is a deadly one. Congress responded to that danger by requiring that a federal Court frame its orders so that those who must obey them will know what the Court intends to require and what it means to forbid. Int'l Long Shoremens Ass'n v. Philadelphia Marine Trader Ass'n, 389 U.S. 64, 76 (1967).

Gates, 98 F. 3d at 468.

Thus, in Gates, the Ninth Circuit declined to enforce a consent injunction requiring a prison facility to provide "an appropriate level of psychiatric evaluation and treatment" for

---

(ambiguous terms are construed against the drafter), the contract should be construed to impose on Lazovitz the obligation to repay regardless of whether it recovers." (Emphasis in original).

[4] The cases cited by Plaintiff are distinguishable. In U.S. v. Armour & Co., 402 U.S. 673, 681 (1971), while the Supreme Court discussed the position of a settling defendant including giving up the risk of further litigation, it also recognized that the scope of a consent decree must be "discerned within its four corners", which is precisely the problem with the instant Cease and Desist Order, since the Order itself does not make clear what conduct is forbidden. Armour, 402 U.S. at 682.

[5] Specificity in terms of consent decrees is the predicate to a finding of contempt, because a person will not be held in contempt unless the Order has given him fair warning. Harris v. City of Philadelphia, 47 F.3d 1342 (3RD Cir. 1998).

prisoners because it was insufficiently specific to uphold contempt order. Therefore, an order finding the prison officials in contempt was vacated and the lower court's order reversed because the standard was too vague.    Gates, 98 F. 3d at 467, 472.    See Converse, Inc. v. Reebok International Ltd., 328 F.Supp. 2d 166, 178 (D. Mass. 2004) (court held that key portions of consent order were not enforceable due to lack of specificity and non-compliance with Rule 65(d); language not sufficient to put shoe company on notice of specific conduct to be restrained or forbidden.)

Defendant Leshem has not been guilty of laches, waiver, or estoppel that he should be barred from seeking the relief he seeks.[6] Leshem could not have known how the SEC would attempt to apply the Order, since his conduct in the earlier SEC case which gave rise to the bar order bears no resemblance to what the SEC now claims constitutes "participating in a penny stock offering."

### C.    All Claims for Relief Against Ananda Must Be Dismissed.

The SEC essentially agrees that claims against Ananda are derivative of those against Leshem. It cites numerous cases dealing with the issue of disgorgement, which are inapplicable. Again, Movants do not question the ability of the SEC to seek disgorgement based on an underlying violation of the securities laws. Here, there is none.

---

[6]    The SEC repeatedly cites to the fact that Leshem was represented by counsel in signing the consent decree. No counsel signed the Offer of Settlement. Whether that is so, does not appear of record, so it would be improper for the Court to consider it. Moreover, it is up to the SEC to structure an Order which may be enforceable by the Court.

SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, ROLNICK & GREIF, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131    (305) 371-8797

## CONCLUSION

For the foregoing reasons, Defendant Leshem and Relief Defendant Ananda ask that all claims against them be dismissed and reserve all their rights under the Equal Access to Justice Act.

Respectfully submitted,

NANCY VAN SANT, ESQUIRE
Florida Bar No. 0885370
**STANLEY A. BEILEY, ESQUIRE**
Florida Bar No. 004848
**SACHER, ZELMAN, VAN SANT, PAUL,
BEILEY, HARTMAN, ROLNICK & GREIF, P.A.**
1401 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 371-8797
Facsimile: (305) 374-2605
Email: nvansant@sacherzelman.com
**Counsel for Defendants
 Ashley Miron Leshem and
 Relief Defendant Ananda Capital Partners,
Inc.**

-10-

SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, ROLNICK & GREIF, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131  (305) 371-8797

-11-

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a copy of the foregoing was sent via facsimile and U.S. Mail to Stephen L. Cohen, Esquire, Counsel for Plaintiff, Securities and Exchange Commission, 100 F Street, N.E., Washington, D.C. 20549 (facsimile: 202-551-9245); and to Kenneth M. Stoner, Esq., Stephen A. Zrenda, Jr., P.C., 5700 NW 132nd St., Oklahoma City, Oklahoma. 73142, (facsimile: 405.721.7310) and Craig Glasser, Esq., Baritz & Colman LLP, 150 E. Palmetto Park Rd., Suite 650, Boca Raton, Florida 33432 (facsimile: 561-750-5045), Co-Counsel for Defendants The Franklin Group, Inc. and John R. Shrewder, this 16th day of May, 2006.

_____
NANCY VAN SANT, ESQ.
Florida Bar No. 0885370
Counsel for Defendants
Ashley Miron Leshem and
Relief Defendant Ananda Capital Partners, Inc.

SACHER, ZELMAN, VAN SANT, PAUL, BEILEY, HARTMAN, ROLNICK & GREIF, P.A., ATTORNEYS, 1401 BRICKELL AVE., STE 700, MIAMI, FL 33131 · (305) 371-8797